## J. S. TOPPAN CO. v. McLAUGHLIN et al.

(Circuit Court, D. Massachusetts. February 26, 1903.)

### No. 1,454.

1. CONTRACTS—EVIDENCE AS TO IDENTITY OF PARTY.

Where there is a direct conflict in the oral testimony of the parties who made a contract with respect to the party in whose behalf it was made, the correspondence between them both before and after it was made becomes of paramount importance, and, if pertinent, is controlling.

2. SAME.

Evidence considered, and *held* to show that a license under a patent was granted to a partnership, and not to a corporation having the same name, subsequently organized, so that the corporation could not maintain a suit thereon.

120 F.—45

In Equity.

Gilman & Rusk and J. Murray Marshall, for J. S. Toppan Co.
William Quinby, for McLaughlin and others.

COLT, Circuit Judge. This bill is brought by the J. S. Toppan Company upon an exclusive license granted by the defendants McLaughlin and Simonds under their patent, No. 575,831, dated January 20, 1897, covering a flexible metallic steam conduit. The license was granted January 2, 1899, for the term of four years.

The first question to be determined is whether the complainant is the licensee named in the license. The complainant is a corporation, and the successor of a copartnership of the same name, both being known as the J. S. Toppan Company. When the license was executed, the Toppan Company was doing business as a copartnership, and the corporation was not in existence. It was not until November 1, 1899—10 months after the date of the license—that the corporation was organized under the laws of Illinois, and the partnership terminated by turning over its assets to the corporation. The original bill alleged that the license was "granted unto the plaintiff." Five months later, after the filing of the answer and a cross-bill, the bill was amended by adding the following paragraph:

"That the complainant was not legally incorporated at the time of the execution of said license, but the said McLaughlin and Simonds well knew that the complainant corporation was to be organized, and said license was delivered to one James S. Toppan, to be held by him, and to be an asset of the complainant corporation, upon its being legally organized, and upon a distinct agreement with said McLaughlin and Simonds that it was the complainant which was to manufacture, use, and sell the said conduits embodying said invention, according to the terms of said license."

The complainant's case on this vital point rests on the proposition that the license was in fact made in behalf of the Toppan corporation, to be organized some time in the future, and that meantime the business under the license was to be conducted by the copartnership. This proposition is supported by the testimony of James S. Toppan, George L. Toppan, his son, Grace D. Toppan, wife of George L. Toppan, and, in a general way, by one D'Este. On the other hand, McLaughlin and Simonds, the licensors, positively deny that the license was made in behalf of the Toppan corporation, or that they had any knowledge of such a corporation until nearly a year after the license was given. Their testimony is to the effect that the license was negotiated with the copartnership, executed by the copartnership, and operated under by the copartnership until it was revoked by them for failure to make returns. They have never in any way recognized the corporation as their licensee.

Where there is such a direct conflict in the oral testimony, documentary evidence, like the correspondence between the parties, becomes of paramount importance. Such evidence, if pertinent, is controlling, since it is the best evidence, and in every way more satisfactory and convincing than the recollection of witnesses as to conversations which occurred more than two years before. In my opinion, the correspondence between these parties, when read in connection

with the license, is consistent with the testimony of the licensors, and inconsistent with the testimony of James S. Toppan and his son. There is not a word in the license, or in the correspondence prior to its execution, and for 11 months thereafter, which in any manner hints, suggests, or intimates that it was made in behalf of the Toppan corporation. The first reference of any kind to a Toppan corporation is in a letter to McLaughlin, dated December 5, 1899, a month after it was organized. In another letter to McLaughlin, written on December 16th, a few days later, this significant passage is found:

"Fearing that you may think it strange our wanting further delay, we want to acquaint you with a few facts. When we first took hold of your joint, we were not an incorporated company, but we soon found that in order to do ourselves mutual justice in the introduction of this device more money would be required than we had anticipated, and in order to push the joint effectually we decided to incorporate, and placed the matter in our attorney's hands, with instructions to prepare the necessary papers."

In this letter, penned nearly a year after the date of the license, J. S. Toppan says he desires to acquaint McLaughlin with a few facts, and then goes on to inform him, in substance, that when the copartnership took hold of the patented device it was not an incorporated company, but soon after it was decided to incorporate, and the matter was placed in the hands of an attorney to prepare the necessary papers. According to this statement, the decision to incorporate was not determined upon until some time subsequent to the license. The first formal step to organize the corporation appears in a communication to the Secretary of State under date of October 25, 1899.

This evidence strongly confirms the testimony of the licensors, and is entirely irreconcilable with the recollection of complainant's witnesses.

The correspondence between the parties began with the following letter and reply:

Chicago, Nov. 29, 1898.

Mr. M. P. McLaughlin, Boston, Mass.

My Dear Sir—Will you kindly inform us if you are in a position at this time to consider a proposition regarding the handling of your new Flexible Steam Heat Conduit?

We shall be pleased to take the matter up with you at such time as you are prepared to entertain the matter, and we believe that we are in a position to give you satisfactory representation.

Trusting that you will give this matter your due consideration and favor us with an early reply, we remain

Yours very respect.                    The J. S. Toppan Company,
                                             By W. R. Toppan.

Boston, Dec. 1, 1898.

The J. S. Toppan Co., Chicago.

Gentlemen—Yours of Nov. 29 recd. I am ready to entertain a proposition from you in the matter of my Flexible Stm. Heat Conduit. I have sold the right for use of the Conduit on the Boston & Maine R. R., and also the right for 50 for the equipment of the new Southern Union Station, now building in Boston.

Yours truly,                             M. P. McLaughlin,
                             Boston Shop, B. & M. R. R., Boston.

This was a communication from the Toppan copartnership to one of the licensors respecting a proposition to handle the flexible joint.

The copartnership styles itself in this letter "The J. S. Toppan Company," and it is so addressed by McLaughlin in his reply. The same designation of the copartnership is found in the license executed a month later. In that paper the party of the second part is "The J. S. Toppan Company," and it is signed "The J. S. Toppan Company." So throughout the correspondence down to December, 1899, there is nothing to show that anything else was meant or intended by the words "The J. S. Toppan Company" than the Toppan copartnership which began the correspondence on November 29, 1898.

The terms and conditions of the license were fully discussed. As first drawn, it was for two years, and the "two" was then changed to "four." This modification is referred to in a parenthetical insertion at the end of the license. Again, through some oversight in signing the license for the Toppan Company, J. S. Toppan signed his own name without the prefix "per" or "by." This omission formed the subject of correspondence between the parties, and was subsequently corrected. These incidents indicate the care taken to have the license fully and accurately embody the agreement of the parties.

Under all the circumstances of this case, it is almost impossible to conceive that so important a matter as a license running to a corporation not in existence, instead of to an existing copartnership, should be left to an oral understanding between the parties, and should remain unnoticed in the license, and in the correspondence for nearly a year thereafter.

Upon the issue whether the license was given to the corporation or the copartnership, the burden of proof rests with the complainant. Not only has it failed to sustain this burden, but the whole evidence, interpreted in the light of the surrounding circumstances, and the existing state of affairs, irresistibly points to the conclusion that the license was granted to the copartnership.

The license provided that, in the event of failure of the licensee "to make returns or to make payment of royalties" on the first days of April, July, October, and January of each year, the license might be terminated on 30 days' notice. No returns having been made for nine months, the licensors sent the following letter of revocation:

Boston, Mass., Oct. 31, 1899.

J. S. Toppan Company,
Great Northern Building, Chicago, Ill.
Gentlemen: In accordance with the 6th paragraph of Articles of Agreement, dated Jan. 2, 1899, between the J. S. Toppan Company and ourselves, Milton P. McLaughlin and S. W. Simonds, we hereby notify you that inasmuch as you have failed in every particular to carry out the conditions and agreements expressed in the said license, for more than thirty days, the said license shall be terminated on the first day of December, 1899.

We further notify you to immediately pay us the royalties which shall accrue up to the first day of December, 1899, on all of the joints referred to in said license, which you have manufactured and sold or may manufacture and sell up to the first day of December, 1899.

And we further notify you that we shall prosecute any infringement which you may make upon our patent No. 575,831, granted Jan. 26, 1897, on and after the first day of December, 1899.

Yours respectfully,                                                    M. P. McLaughlin.
                                                                       S. W. Simonds.

To this letter there was the following reply:

Chicago, Nov. 6, 1899.

Mr. M. P. McLaughlin,

Care Boston & Maine R. R. Shops, Boston, Mass.

Dear Sir—I wired you this morning as follows:

"I have elected to buy your flexible steam conduit patent. Letter to-day." which I hereby confirm. I desire to say that I have elected to buy the flexible steam conduit patent, No. 575,831, and will place in your hands $1,200.00, in accordance with your favor of May 31st, 1899. I shall leave here on or before the 8th inst., for Boston, Mass., and shall be prepared to take an assignment of the Letters Patent, in accordance with your proposition which is hereby accepted.

Respect., J. S. Toppan.

By reason of this notice and J. S. Toppan's reply, the licensors contend that the license was revoked, and that such revocation was acknowledged by the Toppan Company. In reply to this contention it is insisted (1) that no returns were necessary during the period named, because no conduits were made or sold; and (2) that the 30-days notice required under the license was not given, as the notice was not received by the Toppan Company until November 4th. It is unnecessary, however, to pass upon this question of revocation. The complainant's case stands or falls upon the grant of a license to the corporation. If no license was granted, no revocation was necessary. So far as the copartnership is concerned, the revocation is immaterial, since the license terminated on November 1, 1899, when it turned over all its assets to the corporation, which has since conducted the entire business. With respect to the few conduits which were sold by the copartnership during the preceding October, the royalties, amounting to $6.20, have been paid. So far as the corporation is concerned, the question of revocation is unimportant, since we find that it never had a license, and has never been recognized in any way by the defendants McLaughlin and Simonds as their licensee.

Bill to be dismissed, with costs.